## SHAW, Respondent, v. BAMBRICK-BATES CONSTRUCTION COMPANY, Appellant.

### St. Louis Court of Appeals, November 17, 1903.

1. **Master and Servant:** FELLOW SERVANT. A servant, whose duty it is to load stone in a box at the bottom of a quarry, and a servant whose duty it is to signal the engineer to hoist the box when it is loaded, the latter having no direction or control over the former, are fellow-servants.

2. ———: ———: QUESTION OF LAW. Where the essential facts for determining who are fellow-servants are not in controversy, it is a question of law.

3. ———: ———: BURDEN OF PROOF. Where one servant is injured by the negligence of another servant engaged in the same employment, it devolves upon him, relying upon the absence of their relationship as fellow-servants, to prove its non-existence.

Appeal from St. Louis City Circuit Court.—*Hon. J. A. McDonald,* Judge.

REVERSED AND REMANDED.

*Thos. J. Rowe* for appellant.

All the persons engaged in loading the box and hoisting it out of the quarry, namely, the engineer, the man on the bank over the quarry, and the three men engaged in loading the box, were fellow-servants, and neither could recover for any injury sustained by reason of the negligence of the other. Sams v. Railroad, 73 S. W. 686; Devett v. Railroad, 50 Mo. 302; Thorpe v. Railroad, 89 Mo. 650; Lee v. Detroit B. & I. Co., 62 Mo. 565; Murray v. Railroad, 98 Mo. 573; Higgins v. Railroad, 104 Mo. 413; Schaub v. Railroad, 106 Mo. 74; Relyea v. Railroad, 112 Mo. 86; Hughes v. Fagin, 46

Mo. App. 37; Sheehan v. Prosser, 55 Mo. App. 569; Ryan v. McCulby, 123 Mo. 636; Card v. Eddy, 129 Mo. 510; Miller v. Railway, 109 Mo. 356.

*Wm. H. O'Brien* and *B. R. Brewer* for respondent.

(1) The master has certain personal and absolute duties which he owes to his servant and which he can not shift by delegating them to another servant, and if the master does delegate some of these personal duties to another servant, that servant will become a vice-principal of the master and the master will be liable for his negligence. Dutzi v. Geisel, 23 Mo. App. 676; Tailor v. Railroad, 121 Ind. 121; 12 Am. and Eng. Ency. Law (2 Ed.), 946 et seq. (2) One of the absolute duties of a person carrying on a hazardous business is to personally supervise the work, and if the power of supervision and direction is given to a servant, such servant will be a vice-principal of the master and the master will be liable for his negligence. 12 Am. and Eng. Ency. Law (2 Ed.), 970; Steube v. Iron Foundry, 85 Mo. App. 640. (3) Where the master gives power to a person to superintend, control and direct the men engaged in the performance of a work, such person is, as to the men under him, a vice-principal, and it makes no difference by what name he is called; he may occupy the dual position of fellow-workman and vice-principal. Steube v. Iron Foundry, 85 Mo. App. 640; Miller v. Railroad, 109 Mo. 356; Zellars v. Mo. Water & Light Co., 92 Mo. App. 107; Kelly v. Stewart, 93 Mo. App. 47; Weldon v. Railroad, 93 Mo. App. 668; Fox v. Jacob Dold Packing Co., 70 S. W. 164; Bane v. Irwin, 72 S. W. 522.

STATEMENT.

Action for damages for personal injuries suffered by plaintiff in November, 1900, while in employ of defendant as a quarryman. Plaintiff with three other

workmen was engaged in loading rock in a box in defendant's quarry at Forest Park boulevard and Grand avenue, in the city of St. Louis; the box was fastened by three chains to the boom of the derrick, and could not be raised until the three chains were properly attached and adjusted. The derrick was on the bank above and was operated by a steam engine stationed about twenty-eight feet southeast of the quarry bank. The rock was loaded into the box down in the quarry about thirty-five or forty feet below the bank where the derrick and engine operating it were located, the engine being, as stated, about twenty-eight feet back from the quarry bank, thus the engineer in charge of the engine could not see the men in the quarry filling the box, nor could these workmen see the engineer, and, therefore, another workman, variously designated as derrick foreman by plaintiff, and by others derrickman or side-line man, was stationed at the top of the bank, whose duty it was to look over and notice when the box was filled, and then signal the engineer to hoist it to the top of the bank, when the same workman dumped its contents into the crusher, which was about fifteen or twenty feet from the bank; the proof also showed that at times one of the workmen below signaled to or called to the attention of the man on the bank, that the box was prepared to be hoisted. Plaintiff had been employed at the quarry for nearly five months, and on the morning in question the box had been lowered and filled with stone weighing about a ton which was begun to be suddenly hoisted, and plaintiff was caught between the wall of the quarry and the box and received the hurts complained of.

Plaintiff's cause of action was thus pleaded:

"Plaintiff for his cause of action states that defendant is and was at the time hereinafter stated a corporation, existing under the laws of the State of Missouri, and liable to suit as such in the courts of this State, and engaged in the quarrying of stone within the corporate

limits of the city of St. Louis, at a quarry fronting on Laclede avenue, in said city.

"Plaintiff further states that he was employed by defendant, prior to and on November 14, 1900, in quar-- rying stone at the bottom of said quarry, some seventy feet below the natural surface of the ground, and was exercising due care, and that defendant used a steam derrick and chain, with a large truck or box attached thereto, to raise from the quarry the stone gotten out by plaintiff and other workmen; that the agents or servants of defendant in charge of said quarry, on above date, carelessly, negligently and wantonly, and without notice to plaintiff, who was at the time engaged in loading said truck of stone, at the bottom of said quarry, started defendant's engine and caused said truck or box, as aforesaid to be suddenly raised and shifted, thereby striking plaintiff and throwing him against the wall of said quarry and crushing his body, feet and arms, breaking his ankle, and causing internal injuries; that as a result of said defendant's said carelessness, negligence and wanton acts, plaintiff is permanently injured, his earning capacity permanently impaired, has suffered and will suffer great loss of time, as well as large expenses for medical services, medicine and nursing, and: has suffered and will suffer great mental pain and anguish."

REYBURN, J. (after stating the facts as above).— The assignment of negligence relied on in the petition is the carelessness, negligence and wantonness of defendant's servants in charge of its quarry, without warning to plaintiff, who was engaged in loading the box with stone at the bottom of the quarry, in starting the engine and causing the box to be suddenly raised and shifted, striking and injuring him; the complaint is barren of any charge of incompetency or unfitness on the part of any of his fellow-servants, or of any assertion that the machinery and appliances were unfit or

perilous, or the place that where he worked was hazardous, or not reasonably safe. Defendant insists that plaintiff and the workman at the top of the quarry bank, Luke Eurich by name, who did not appear at the trial, and who, if any one, was guilty of the carelessness producing the accident, were mere fellow-servants, and the common employer (appellant), in consequence was not liable.

In Moore v. Railway, 85 Mo. 594, the court says: "If we may venture a general proposition on the subject it is, that all are fellow-servants who are engaged in the prosecution of the same common work, leaving no dependence upon or relation to each other, except as co-laborers without rank, under the direction and management of the master himself, or of some servant placed by the master over them. If a person employs another to perform a duty, which he would have to discharge, if another were not employed to do it for him, such employee, as to that service, stands in the master's stead, with relation to other persons," and the Supreme Court has further said that a foreman may occupy a dual position, that is, he may be at the same time a fellow-servant and representative of the master, and when the master delegates to a servant power to superintend, control and direct the men engaged in the performance of work, such person is, as to the men under him, a vice-principal whether he be called superintendent, conductor, boss or foreman and for his negligent acts in performing the duties of his master, the latter is liable. Miller v. Railway, 109 Mo. l. c. 356.

But under the facts herein made patent, plaintiff and the workman at the top of the bank were, at the time of the injury, directly co-operating with each other in performing the work of their common master, engaged under the same foreman and in the same general business. So far as the record discloses, the servant signaling the engineer was delegated by the master with no power to superintend, control or direct the other

workmen engaged in the common employment, and it can not be said that this workman, whose sole duties appear to have been to observe when the box was filled by his fellow-workmen at the bottom of the quarry, and give notice to the engineer to begin its elevation to the top for transporation to the crusher, where the same workman turned in its contents, took the place of the master or in any way was his representative. The proof establishes that the master was represented at the quarry other than by Luke Eurich, the man who signaled the engineer, such representative being termed by plaintiff the general foreman. Under the facts here exhibited, the injured quarryman and Eurich were prima facie mere fellow-servants. Where the essential facts for determining who are fellow-servants are not in controversy, the question then resolves itself into simply one of law, but it devolves upon him relying upon the absence of such relationship to establish by proof its non-existence. McGowan v. Railroad, 61 Mo. 528; Blessing v. Railway, 77 Mo. 410; Sheehan v. Prosser, 55 Mo. App. 569.

The doctrine of the case of Steube v. Iron Co., 85 Mo. App. 640, relied on by respondent, that where from the nature of the work in which the workmen were engaged and from its hazardous character, it is the duty of the master to superintend it, which he can not escape by delegating the oversight to an employee, in other respects a fellow-servant, fails to fit the facts constituting plaintiff's case. Nor are the many cases applicable cited by respondent, where the employer had violated the obligation to furnish the employee at all times a reasonably safe place in which to do the work required of him, as in Zellars v. Light Company, 92 Mo. App. 107; Weldon v. Railway, 93 Mo. App. 668, and other cases cited, for no such allegation was contained in the petition nor established by the proof.

Under the facts in evidence herein, plaintiff and the signaling workmen were fellow-servants at the time of

the casualty, engaged in a common employment under the same master, and so associated and situated towards each other that they could report to their common master for redress of any delinquent conduct on the part of each other, and could each exercise preventive care over the conduct of the other, the latter constituting general and established tests of the attitude of servants of the same employer. Parker v. Railway, 109 Mo. l. c. 409. The appellant was not liable to respondent for any injury resulting from the negligence of his fellow-servant in the same common service. Parker v. Railway, 109 Mo. 362; Ryan v. McCully, 123 Mo. 636, and the judgment is reversed and the cause remanded. *Bland, P. J.,* and *Goode, J.,* concur.